IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHARLES KIGER,**

    **Petitioner,**

v.                              **Civil Action No. 5:13cv12**
                                      **(Judge Stamp)**

**TIMOTHY STEWART, Warden,**
    **Respondent.**

## REPORT AND RECOMMENDATION

On November 27, 2012, the *pro se* petitioner filed a Motion for Preliminary Injunctive Relief Against Discrimination and Retaliation in a closed <u>Bivens</u> case.[1] On January 28, 2013, Magistrate Judge Joel entered an Order directing that the petition be used to open a new case. The new case was opened that same date, as a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241, and the petitioner was sent a Notice of Deficient Pleading. On February 14, 2013, the petitionerf filed this Court's form § 2241 petition and attached to it his original Motion for Preliminary Injunctive Relief. On March 25, 2013, he paid the $5.00 filing fee.

In his habeas petition, the petitioner alleges that 18 U.S.C. § 3624(c) limits a prisoner's transfer to a non-prison site to a period "not to exceed 6 months of the last (10) percentum [sic] of the term to be served." (Doc. 9, p. 5). He further alleges that this restriction violates the APA and

---

[1] That case, Civil Action. No. 2:11cv70 was initiated on September 7, 2011. In it, the plaintiff alleged a violation of his 8th Amendment rights and specifically complained that staff at FCI Morgantown was deliberately indifferent to his serious medical needs. His complaint was dismissed with prejudice on July 12, 2012. His appeal of that decision was dismissed by the Fourth Circuit on January 25, 2013. On April 1, 2013, the Fourth Circuit denied his petition for rehearing, and the Mandate issued on April 9, 2013.

1

violates the Eighth Amendment's prohibition against cruel and unusual punishment. The petitioner acknowledges that he has not utilized the prison's internal grievance procedure with respect to the claim raised in his 2241 petition and provides no reason why he did not. For relief, the petitioner seeks immediate release.

In support of his 2241 petition, the petitioner has attached a Declaration in which he states that he was enrolled in the Residential Drug and Alcohol Program. However, he maintains that he was discriminated against due to his medical condition because the program requires all participants to work and perform duties which he is unable to do because of his condition. Moreover, he maintains that he was told he could not go to a half-way house due to his disability. He also alleges that he was told he had to attend GED classes and his medical note of "no duty" was not good enough. He alleges that he received a 200 series incident report as a result, but it was subsequently expunged. He also alleges that he has been tested for drugs while on a "no drug test list from the Court." Finally, he alleges that his home detention time has been reduced from 180 days to 91 days as further retaliation against him for his Bivens lawsuit.

With respect to his request for injunctive relief, the petitioner again alleges that the BOP is denying him any and all halfway house time and has reduced his home detention to 91 days while other inmates at FCI Morgantown are receiving 6 months halfway house and/or home detention. The plaintiff maintains that his treatment by the BOP violates Title II of the Americans with Disabilities Act ("ADA"). For relief, the petitioner seeks an order directing staff at FCI Morgantown to re-evaluate the time given to him for halfway house and home detention and allow for the maximum time available to him so that he can re-acclimate himself to society.

## I. ANALYSIS

**A. Injunctive Relief**

The Supreme Court of the United States explained the relevant test for granting a preliminary injunction in Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374-76 (1008). A plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." See also Real Truth About Obama, Inc.v. Federal Election Comm'n, 575 F.3d 342 (4th Cir. 2009).

Without specifically addressing the other factors, the petitioner's claim for a preliminary injunction clearly fails to satisfy the first factor because he cannot succeed on the merits of his request for injunctive relief. More specifically, the petitioner bases his claim for relief on the provision of the ADA. The ADA, as it applies to public entities, is codified at 42 U.S.C. §§ 12131 et seq. It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional facilities. See Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998). However, absent an explicit waiver of sovereign immunity, the United States is generally immune from suit. United States v. Mitchell, 445 U.S. 535, 538 (1980). This "immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475 (1994), and extends to government agencies and employees. Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996). The ADA does not contain a waiver of sovereign immunity and thus, does not apply to the federal government. Crowder v. True, 845 F.Supp. 1250 (N.D.ILL. 1994). Accordingly, the petitioner's reliance on the ADA is misplaced, and he has provided no basis for injunctive relief.

**B. 2241 Petition**

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not

mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See id. at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. See Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Id. at 1327 (citation omitted).

In this case, the petitioner acknowledges that he has not sought resolution of this matter

4

through the BOP's administrative remedies. However, exhaustion of administrative remedies would clearly be appropriate in this instance.

First, it is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in a half-way house or on home confinement prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, it would be appropriate to require the petitioner to exhaust his administrative remedies before applying for relief from this court. Likewise, given that the BOP is charged with the responsibility of administering the RDAP and has expertise in this area, the petitioner should also address his apparent expulsion from RDAP through the administrative remedy process.

By requiring the petitioner to attempt resolution of his claim within the Bureau's administrative remedy process, the Court would be promoting many of the policies which underlie the exhaustion principle. For example, the administrative remedy process could develop the necessary factual background upon which the petitioner's claim is based, allow the BOP the opportunity to exercise its discretion and apply its expertise in this area, conserve scarce judicial resources, give the BOP a chance to discover and correct its own possible error, and avoid the deliberate flouting of the administrative process.

## C. Miscellaneous Motion

On February 11, 2013, the petitioner filed a Motion to Appeal *in forma pauperis* which was sent to the Elkins point of holding court. It appears that the petition may have been attempting to

file an interlocutory appeal of Magistrate Judge Joel's order directing that a new case be opened. However, in his motion, the petitioner indicates that he is the plaintiff, the Civil Case Number is "TBA", and the defendants are ten unknown FCI Employees to be named later. Nothing in the motion corresponds with the Motion for Preliminary Injunctive Relief Against Discrimination and Retaliation. Moreover, if the petitioner intended his Motion for Preliminary Injunctive Relief Against Discrimination and Retaliation to form a basis for another Bivens action, the filing fee would have been $350 not $5. The undersigned believes that the Motion to Appeal was improvidently filed.

## II. RECOMMENDATION

For the foregoing reasons, it is hereby RECOMMENDED that the petitioner's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE** and his Habeas Petition (Doc. 9) be **DISMISSED WITHOUT PREJUDICE.** It is further recommended that the petitioner's Motion to Appeal *In Forma Pauperis* (Doc.) be **DENIED.**

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn,

474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Dated: April 12, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE